IN CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA

DONALD ANDERSON,

     Plaintiff,

vs.

THADDEUS MICHAEL BULLARD
SR. a/k/a TITUS O'NEIL; and WORLD
WRESTLING ENTERTAINMENT, INC.,

     Defendants.

_____ /

## COMPLAINT

Plaintiff, DONALD ANDERSON, sues Defendants, THADDEUS MICHAEL BULLARD SR. a/k/a TITUS O'NEIL and WORLD WRESTLING ENTERTAINMENT, INC., and alleges:

### JURISDICTIONAL ALLEGATIONS

1.     This is a cause of action for damages in an amount exceeding Fifteen Thousand and 0/100 Dollars ($15,000.00), exclusive of interest and costs.

2.     At all times relevant, DONALD ANDERSON ("ANDERSON") was, and now is, an individual residing in Woodland Hills, California.

3.     At all times relevant, THADDEUS MICHAEL BULLARD SR. a/k/a TITUS O'NEIL ("TITUS O'NEIL") was, and now is, an individual residing in Lutz, Florida.

4.     At all times relevant, WORLD WRESTLING ENTERTAINMENT, INC. ("WWE") was, and now is, a Delaware Foreign Profit Corporation, licensed, authorized and conducting business in Florida. The WWE is also currently, and at all times relevant to this

lawsuit, registered as a foreign corporation in the State of California and maintains a Registered Agent in the State of California.

5.     Venue is appropriate in Pasco County, Florida because TITUS O'NEIL resides in Pasco County, Florida.

### FACTUAL ALLEGATIONS

6.     ANDERSON was engaged by Uranus Productions, LLC ("Uranus") to work in conjunction with the WWE and its respective employees, agents, heirs, representatives, successors, assign, servants, officers, directors, insurers and/or predecessors, to produce an "electric shock prank" television show.

7.     The WWE is one of the top global entertainment brands in the world. The WWE operates, and in some manners owns the "WWE Network." The WWE Network is an international, subscription-based video streaming service that provides access to WWE entertainment content and other products.  WWE programming content is available at the WWE's official YouTube channel (YouTube.com/WWE) and otherwise.

8.     The WWE Network currently features shows called "Swerved" on YouTube, and other shows, on which a hidden camera prank show is filmed and distributed as entertainment, and which features WWE wrestlers and performers.

9.     On one such episode of the WWE Network show Swerved, the season one finale published on March 15, 2016, WWE representative, agent, performer, and "Superstar" Paige a/k/a Saraya-Jade Bevis, is featured hunting down fellow WWE "Superstars" with an electric shock stick, and shocking WWE "Superstars." The episode currently has 2,759,296 views.[1]

---

[1] The 2,759,296 views was current as of March 13, 2018. Total views likely have increased since this date, and will

METTS LEGAL, P.A.
607 N. Wymore Road, Winter Park, Florida 32789 | Office: 321.422.0430 | Fax: 321.422.0499

10.    On or about May 18, 2015, ANDERSON was on the premises occupied, controlled and managed by the WWE, during the production of the WWE electric shock prank program. The WWE was also filming its "Superstars" television show on the premises, which Paige and TITUS O'NEIL were a part of.

11.    At the time, ANDERSON was a camera operator for Uranus, which had been retained by WWE to produce Swerved and create such content for WWE entertainment purposes. Anderson had no other role and undertook no other actions.

12.    WWE specifically directed Uranus that WWE would select its own representatives to organize, manage and direct the electric shock prank activity. Consequently, WWE representatives undertook the job of selecting specific WWE personalities as targets, on which to use the electric shock device.

13.    Unbeknownst to ANDESRON, Plaintiff is informed and believes, and based thereon alleges, that WWE representatives had been authorized, encouraged, and directed by WWE management to "prank" WWE wrestlers and performers, and to cooperate fully with Uranus to develop an exciting show.

14.    TITUS O'NEIL was known by the WWE as possessing significant anger management issues. WWE representatives provided a tour of the facility for the prank, and during that tour, used the electric shock device on various WWE superstars and personalities. ANDERSON followed closely behind WWE representatives, as he was directed to do, to film said WWE representatives' actions, using a hand-held camera. WWE representatives selected TITUS O'NEIL as a target and prank subject, and used the electric shock device on him.

15.    TITUS O'NEIL is a 6'6" 265 lbs ex-professional football player and current professional WWE wrestler "Superstar." The WWE website maintains a WWE Superstar

profile, which states, TITUS O'NEIL "knows a thing or two about hard-hitting physical dominance." [http://www.wwe.com/superstars/titus-oneil].



16.    Once WWE representatives shocked TITUS O'NEIL with the electric shock device, TITUS O'NEIL became enraged and began shouting, and he raced up to ANDERSON in a threatening manner.

17.    TITUS O'NEIL proceeded to forcefully kick ANDERSON'S wrist, hand and fingers, which were supporting and grasping the camera to film the prank activity. The blow by TITUS O'NEIL to ANDERSON'S body was so strong that the camera, along with ANDERSON'S hand, fingers and wrist were violently propelled outward from ANDERSON'S person as a result of TITUS O'NEIL'S powerful kick. The kick caused permanent and long term injuries to ANDERSON'S wrist and hand, and his fingers were impacted and injured for a significant initial period of time.

18.    Directly following the incident, ANDERSON was told by WWE personnel that he was not safe on the premises, that TITUS O'NEIL could not be controlled, and that ANDERSON had to leave immediately because TITUS O'NEIL had become unmanageable and presented an

ongoing threat of harm to ANDERSON. ANDERSON was whisked away from the scene of the incident, in fear of the possibility of further attacks by TITUS O'NEIL.

19.   WWE failed to maintain a well-supervised, secure, managed, safe environment inside the arena, of which it had complete control, both at and after the time the incident took place.

20.   Knowing the perils involved in selecting and enabling Paige to direct the electric shock prank and target WWE wrestlers, known for their violent propensities and egocentric personalities, and knowing the prank would likely and probably create a risk of danger and injury to others, the WWE nevertheless facilitated the prank at its own facilities, to promote and advance the notoriety of its enterprise and to create an entertainment product for sale to the public.

21.   The WWE failed to make any effort to ensure the safety and security of those engaged to undertake this work on the premises, which were occupied, controlled and operated by the WWE.  By facilitating a knowingly dangerous prank, failing to properly manage reactions to that prank, and failing to provide proper security and safe conditions inside of a premises it controlled and occupied, the WWE acted with conscious disregard for the safety of others, in particular ANDERSON.

### COUNT I
### BATTERY – TITUS O'NEIL

22.   ANDERSON restates and asserts the allegations outlined above.

23.   TITUS O'NEIL caused the infliction of a harmful and offensive contact upon ANDERSON with the intent to cause such contact.

24.    Specifically,   TITUS   O'NEIL   deliberately   and   intentionally   kicked ANDERSON'S wrist, hand and fingers, which were supporting and grasping the camera to film the prank activity, causing the camera along with ANDERSON'S hand, fingers and wrist to be violently propelled outward from ANDERSON'S person.

25.    ANDERSON did not consent to TITUS O'NEIL'S act.

26.    As a direct and proximate result of this battery, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of the capacity for enjoyment of life, and loss of ability to earn money.  Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

**COUNT II**
**ASSUALT – TITUS O'NEIL**

27.    ANDERSON restates and asserts the allegations outlined above.

28.    TITUS O'NEIL intended to cause ANDERSON to fear humiliation and immediate violence by his actions.

29.    TITUS O'NEIL'S intimidating approach to ANDERSON put him in immediate fear of harm by TITUS O'NEIL.

30.    ANDERSON reasonably believed that he was about to be harmed and injured, and was harmed and injured as a result of TITUS O'NEIL'S attack.

31.    As a direct and proximate result of this assault, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of

METTS LEGAL, P.A.
607 N. Wymore Road, Winter Park, Florida 32789 | Office: 321.422.0430 | Fax: 321.422.0499

the capacity for enjoyment of life, and loss of ability to earn money. Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

## COUNT III
## NEGLIGENCE – TITUS O'NEIL

32.     ANDERSON restates and asserts the allegations outlined above.

33.     TITUS O'NEIL was under a duty to exercise care commensurate with the foreseeable risk of danger created by a 6'6", 265 lbs ex-professional football player and current professional WWE Superstar wrestler exuding a forceful kick to the modestly built body of ANDERSON, who was helplessly vulnerable to TITUS O'NEIL'S overwhelming strength, speed, and athleticism.

34.     Because of his undeniable strength and power, TITUS O'NEIL knew or should have known that his act of forcefully kicking the hand of ANDERSON would cause severe and serious injury to ANDERSON.

35.     TITUS O'NEIL'S targeting of a modestly built man to take the punishment for his anger, left ANDERSON shamed, humiliated and entirely emasculated as he could not dare to defend himself or to respond in any manner.

36.     TITUS O'NEIL breached his duty and failed to exercise reasonable care commensurate with the reasonably foreseeable risk of injury in racing toward ANDERSON in a threatening manner and forcefully kicking ANDERSON'S hand.

37.     As a direct and proximate result of this negligence, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of

METTS LEGAL, P.A.
607 N. Wymore Road, Winter Park, Florida 32789 | Office: 321.422.0430 | Fax: 321.422.0499

the capacity for enjoyment of life, and loss of ability to earn money.  Said injuries are either

permanent or continuing in nature and ANDERSON will suffer the losses in the future.

### COUNT IV
### GROSS NEGLIGENCE – TITUS O'NEIL

38.    ANDERSON restates and asserts the allegations outlined above.

39.    TITUS O'NEIL was under a duty to exercise care commensurate with the

foreseeable risk of danger created by a 6'6", 265 lbs ex-professional football player and current

professional WWE Superstar wrestler exuding a forceful kick to the modestly built body of

ANDERSON, who was helplessly vulnerable to TITUS O'NEIL'S overwhelming strength, speed,

and athleticism.

40.    A reasonable prudent person would know that a 6'6", 265 lbs ex-professional

football player and current professional WWE Superstar wrestler exuding a forceful kick to the

modestly built body of ANDERSON is likely to result in ANDERSON being injured.

41.    TITUS O'NEIL intentionally kicking ANDERSON constitutes an imminent or

clear and present danger amounting to more than a normal and usual peril.

42.    TITUS O'NEIL had chargeable knowledge or awareness that his act of forcefully

kicking the hand of ANDERSON would cause severe and serious injury to ANDERSON.

43.    TITUS O'NEIL had a conscious disregard for ANDERSON'S safety when he

decided he was going to kick the camera out of ANDERSON'S hand.

44.    As a direct and proximate result of this gross negligence, ANDERSON was

injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme

emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of

the capacity for enjoyment of life, and loss of ability to earn money. Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – TITUS O'NEIL

45.    ANDERSON restates and asserts the allegations outlined above.

46.    TITUS O'NEIL committed illegal, obscene, acts of assault, battery and other acts described herein against ANDERSON.

47.    TITUS O'NEIL'S conduct was intentional or with reckless disregard of the probability of causing emotional distress upon ANDERSON.

48.    TITUS O'NEIL'S conduct was extreme and outrageous in that his conduct exceeded the bounds of decency and was odious and utterly intolerable in a civilized community.

49.    TITUS O'NEIL'S conduct caused ANDERSON to suffer extreme emotional distress.

50.    TITUS O'NEIL'S conduct as herein described was deliberate, willful, wanton, and malicious.

51.    As a direct and proximate result of this extreme and outrageous conduct, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of the capacity for enjoyment of life, and loss of ability to earn money. Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – TITUS O'NEIL

52.    ANDERSON restates and asserts the allegations outlined above.

METTS LEGAL, P.A.
607 N. Wymore Road, Winter Park, Florida 32789 | Office: 321.422.0430 | Fax: 321.422.0499

53.    TITUS O'NEIL committed illegal, obscene, acts of assault, battery and other acts described herein against ANDERSON, which resulted in harm to ANDERSON.

54.    TITUS O'NEAL owed ANDERSON a duty to refrain from committing such tortuous conduct and breached that duty by failing to do so, which he knew or should have known would cause physical injuries and sever emotional distress.

55.    As a direct and proximate result of this outrageous conduct, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of the capacity for enjoyment of life, and loss of ability to earn money.  Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

## COUNT VII
## RESPONDEAT SUPERIOR - BATTERY – WWE

56.    ANDERSON restates and asserts the allegations outlined above.

57.    TITIUS O'NEIL was hired by WWE in part due to his violent propensities and aggressive manner towards others.

58.    TITUS O'NEIL was an agent and/or employee of the WWE at the time he committed the battery upon ANDERSON.

59.    The battery committed by TITUS O'NEIL upon ANDERSON took place during the course and scope of TITUS O'NEIL'S employment and/or agency relationship with the WWE.

60.    The WWE was responsible for bringing ANDERSON into contact with TITUS O'NEIL and the WWE knew or should have known of TITUS O'NEIL'S predisposition to

commit the torts outlined above under circumstances that create opportunity or enticement to commit the torts, such as TITUS O'NEIL being shocked with an electric shock stick.

61.    The WWE potentially or indirectly was to, or did, receive a benefit from the meeting between ANDERSON and TITUS O'NEIL as the meeting took place during the taping of Swerved.

62.    The battery committed by TITUS O'NEIL upon ANDERSON was activated at least in part by a desire to serve the WWE, and to further a purpose or interest, however excessive or misguided, of his employment and/or agency relationship with the WWE, and was assisted in accomplishing his tortuous conduct by the existence of the employer / employee and or agency relationship, and utilized the authority granted to him as an employee and/or agent to accomplish these acts thus making WWE liable for those various acts.

63.    WWE, through its officers, managers, supervisors and other agents had actual and/or constructive knowledge and notice of TITUS O'NEIL possessing significant anger management issues, but did not take action, remedial or otherwise to stop TITUS O'NEIL, but instead ratified and approved those actions by permitting them to continue and by facilitating the continuation of those actions.

64.    WWE, is liable for the battery described above inflicted upon ANDERSON in that they knew or should have known of TITUS O'NEIL'S hostile, unsolicited and offensive conduct against ANDERSON and that the intentional and/or outrageous conduct would cause ANDERSON severe and significant physical and/or emotional distress and harm but failed to meet their duty/obligation to prevent TITUS O'NEIL'S conduct.

65.    As a direct and proximate result of this battery, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme

METTS LEGAL, P.A.
607 N. Wymore Road, Winter Park, Florida 32789 | Office: 321.422.0430 | Fax: 321.422.0499

emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of

the capacity for enjoyment of life, and loss of ability to earn money.  Said injuries are either

permanent or continuing in nature and ANDERSON will suffer the losses in the future.

## COUNT VIII
## RESPONDEAT SUPERIOR - ASSUALT – WWE

66.    ANDERSON restates and asserts the allegations outlined above.

67.    TITIUS O'NEIL was hired by WWE in part due to his violent propensities and

aggressive manner towards others.

68.    TITUS O'NEIL was an agent and/or employee of the WWE at the time he

committed the assault upon ANDERSON.

69.    The assault committed by TITUS O'NEIL upon ANDERSON took place during

the course and scope of TITUS O'NEIL'S employment and/or agency relationship with the

WWE.

70.    The WWE was responsible for bringing ANDERSON into contact with TITUS

O'NEIL and the WWE knew or should have known of TITUS O'NEIL'S predisposition to

commit the torts outlined above under circumstances that create opportunity or enticement to

commit the torts, such as TITUS O'NEIL being shocked with an electric shock stick.

71.    The WWE potentially or indirectly was to, or did, receive a benefit from the

meeting between ANDERSON and TITUS O'NEIL as the meeting took place during the taping

of Swerved.

72.    The assault was activated at least in part by a desire to serve the WWE, and to

further a purpose or interest, however excessive or misguided, of his employment and/or agency

relationship with the WWE, and was assisted in accomplishing his tortuous conduct by the

existence of the employer / employee and or agency relationship, and utilized the authority granted to him as an employee and/or agent to accomplish these acts thus making WWE liable for those various acts.

73.     WWE, through its officers, managers, supervisors and other agents had actual and/or constructive knowledge and notice of TITUS O'NEIL possessing significant anger management issues, but did not take action, remedial or otherwise to stop TITUS O'NEIL, but instead ratified and approved those actions by permitting them to continue and by facilitating the continuation of those actions.

74.     WWE is liable for the assault described above inflicted upon ANDERSON in that they knew or should have known of TITUS O'NEIL'S hostile, unsolicited and offensive conduct against ANDERSON and that the intentional and/or outrageous conduct would cause ANDERSON severe and significant physical and/or emotional distress and harm but failed to meet their duty/obligation to prevent TITUS O'NEIL'S conduct.

75.     As a direct and proximate result of this assault, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of the capacity for enjoyment of life, and loss of ability to earn money.  Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

### COUNT IX
### NEGLIGENCE– WWE

76.     ANDERSON restates and asserts the allegations outlined above.

77.     The WWE had a duty to maintain a well-supervised, secure, managed, safe environment inside the arena, of which it had complete control, both at and after the time the incident took place.

78.     The WWE also had a duty to ensure that the filming of its show Swerved was conducted in a safe and prudent manner.

79.     The WWE breached these duties when it selected and enabled Paige to direct the electric shock prank and target WWE wrestlers, known for their violent propensities and egocentric personalities, and knowing the prank would likely and probably create a risk of danger and injury to others, the WWE nevertheless facilitated the prank at its own facilities, to promote and advance the notoriety of its enterprise and to create an entertainment product for sale to its public.

80.     The WWE also breached these duties by failing to prevent TITUS O'NEIL from becoming enraged and committing torts upon ANDERSON.

81.     WWE knew or should have known that a breach of these duties could result in someone from the general public, including ANDERSON, being injured.

82.     As a direct and proximate result of WWE'S negligence, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of the capacity for enjoyment of life, and loss of ability to earn money.  Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

## COUNT X
## GROSS NEGLIGENCE– WWE

83.     ANDERSON restates and asserts the allegations outlined above.

84.     The WWE had a duty to maintain a well-supervised, secure, managed, safe environment inside the arena, of which it had complete control, both at and after the time the incident took place.

85.     The WWE also had a duty to ensure that the filming of its show Swerved was conducted in a safe and prudent manner.

86.     A reasonable prudent person would know that touching a 6'6", 265 lbs ex-professional football player and current professional WWE Superstar wrestler with an electrical stick could create a violent situation, which it did.

87.     This created an imminent or clear and present danger amounting to more than a normal and usual peril.

88.     WWE had chargeable knowledge or awareness that the act of performing this prank on TITUS O'NEIL could cause severe and serious injury to ANDERSON.

89.     WWE had a conscious disregard for ANDERSON'S safety when it decided to play this prank on TITUS O'NEIL.

90.     As a direct and proximate result of this gross negligence, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of the capacity for enjoyment of life, and loss of ability to earn money.  Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

## COUNT XI
## NEGLIGENT RETENTION, TRAINING AND SUPERVISION – WWE

91.     ANDERSON restates and asserts the allegations outlined above.

92.     During the course of TITUS O'NEIL'S employment and/or agency relationship with the WWE, the WWE was aware of or should have been aware of problems with TITUS O'NEIL that indicated his unfitness for the job and failed to take further action such as investigating, discharge or reassignment.

93.     Due to this actual or constructive knowledge, the WWE had a duty to provide adequate supervision and training for this employee and/or agent so that the general public, including ANDERSON, would not be harmed.

94.     The WWE breached its duty and as a direct and proximate result, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of the capacity for enjoyment of life, and loss of ability to earn money.  Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

95.     The WWE was responsible for bringing ANDERSON into contact with TITUS O'NEIL and the WWE knew or should have known of TITUS O'NEIL'S predisposition to commit the torts outlined above under circumstances that create opportunity or enticement to commit the torts, such as TITUS O'NEIL being shocked with an electric shock stick.

96.     The WWE potentially or indirectly was to or did receive a benefit from the meeting between ANDERSON and TITUS O'NEIL as the meeting took place during the taping of Swerved.

## COUNT XII
## RESPONDEAT SUPERIOR – INTENTIONAL
## INFLICTION OF EMOTIONAL DISTRESS – WWE

97.     ANDERSON restates and asserts the allegations outlined above.

METTS LEGAL, P.A.
607 N. Wymore Road, Winter Park, Florida 32789 | Office: 321.422.0430 | Fax: 321.422.0499

98.    TITIUS O'NEIL was hired by WWE in part due to his violent propensities and aggressive manner towards others.

99.    TITUS O'NEIL committed illegal, obscene, acts of assault, battery and other acts described herein against ANDERSON.

100.    TITUS O'NEIL'S conduct was intentional or with reckless disregard of the probability of causing emotional distress upon ANDERSON.

101.    TITUS O'NEIL'S conduct was extreme and outrageous in that his conduct exceeded the bounds of decency and was odious and utterly intolerable in a civilized community.

102.    TITUS O'NEIL'S conduct caused ANDERSON to suffer extreme emotional distress.

103.    TITUS O'NEIL'S conduct as herein described was deliberate, willful, wanton, and malicious.

104.    TITUS O'NEIL was an agent and/or employee of the WWE at the time he committed this extreme and outrageous actions upon ANDERSON.

105.    The extreme and outrageous actions committed by TITUS O'NEIL upon ANDERSON took place during the course and scope of TITUS O'NEIL'S employment and/or agency relationship with the WWE.

106.    The WWE was responsible for bringing ANDERSON into contact with TITUS O'NEIL and the WWE knew or should have known of TITUS O'NEIL'S predisposition to commit the torts outlined above under circumstances that create opportunity or enticement to commit the torts, such as TITUS O'NEIL being shocked with an electric shock stick.

107. The WWE potentially or indirectly was to, or did, receive a benefit from the meeting between ANDERSON and TITUS O'NEIL as the meeting took place during the taping of Swerved.

108. The extreme and outrageous actions committed by TITUS O'NEIL upon ANDERSON were activated at least in part by a desire to serve the WWE, and to further a purpose or interest, however excessive or misguided, of his employment and/or agency relationship with the WWE, and was assisted in accomplishing his tortuous conduct by the existence of the employer / employee and or agency relationship, and utilized the authority granted to him as an employee and/or agent to accomplish these acts thus making WWE liable for those various acts.

109. WWE, through its officers, managers, supervisors and other agents had actual and/or constructive knowledge and notice of TITUS O'NEIL possessing significant anger management issues, but did not take action, remedial or otherwise to stop TITUS O'NEIL, but instead ratified and approved those actions by permitting them to continue and by facilitating the continuation of those actions.

110. WWE, is liable for the extreme and outrageous actions described above inflicted upon ANDERSON in that they knew or should have known of TITUS O'NEIL'S hostile, unsolicited and offensive conduct against ANDERSON and that the intentional and/or outrageous conduct would cause ANDERSON severe and significant physical and/or emotional distress and harm but failed to meet their duty/obligation to prevent TITUS O'NEIL'S conduct.

111. As a direct and proximate result of this extreme and outrageous conduct, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of

METTS LEGAL, P.A.
607 N. Wymore Road, Winter Park, Florida 32789 | Office: 321.422.0430 | Fax: 321.422.0499

income, loss of the capacity for enjoyment of life, and loss of ability to earn money.  Said injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

**COUNT XII**
**RESPONDEAT SUPERIOR – NEGLIGENT**
**INFLICTION OF EMOTIONAL DISTRESS – WWE**

112.    ANDERSON restates and asserts the allegations outlined above.

113.    TITIUS O'NEIL was hired by WWE in part due to his violent propensities and aggressive manner towards others.

114.    TITUS O'NEIL committed illegal, obscene, acts of assault, battery and other acts described herein against ANDERSON, which resulted in harm to ANDERSON.

115.    TITUS O'NEAL owed ANDERSON a duty to refrain from committing such tortuous conduct and breached that duty by failing to do so, which he knew or should have known would cause physical injuries and sever emotional distress.

116.    TITUS O'NEIL was an agent and/or employee of the WWE at the time he committed this extreme and outrageous actions upon ANDERSON.

117.    The tortuous conduct committed by TITUS O'NEIL upon ANDERSON took place during the course and scope of TITUS O'NEIL'S employment and/or agency relationship with the WWE.

118.    The WWE was responsible for bringing ANDERSON into contact with TITUS O'NEIL and the WWE knew or should have known of TITUS O'NEIL'S predisposition to commit the torts outlined above under circumstances that create opportunity or enticement to commit the torts, such as TITUS O'NEIL being shocked with an electric shock stick.

119.   The WWE potentially or indirectly was to, or did, receive a benefit from the meeting between ANDERSON and TITUS O'NEIL as the meeting took place during the taping of Swerved.

120.   The tortuous conduct committed by TITUS O'NEIL upon ANDERSON was activated at least in part by a desire to serve the WWE, and to further a purpose or interest, however excessive or misguided, of his employment and/or agency relationship with the WWE, and was assisted in accomplishing his tortuous conduct by the existence of the employer / employee and or agency relationship, and utilized the authority granted to him as an employee and/or agent to accomplish these acts thus making WWE liable for those various acts.

121.   WWE, through its officers, managers, supervisors and other agents had actual and/or constructive knowledge and notice of TITUS O'NEIL possessing significant anger management issues, but did not take action, remedial or otherwise to stop TITUS O'NEIL, but instead ratified and approved those actions by permitting them to continue and by facilitating the continuation of those actions.

122.   WWE, is liable for the tortuous conduct described above inflicted upon ANDERSON in that they knew or should have known of TITUS O'NEIL'S hostile, unsolicited and offensive conduct against ANDERSON and that the intentional and/or outrageous conduct would cause ANDERSON severe and significant physical and/or emotional distress and harm but failed to meet their duty/obligation to prevent TITUS O'NEIL'S conduct.

123.   As a direct and proximate result of this extreme and outrageous conduct, ANDERSON was injured, including, but not limited to, bodily injury, pain and suffering, mental anguish, extreme emotional distress, disfigurement, medical expenses, physical handicap, loss of income, loss of the capacity for enjoyment of life, and loss of ability to earn money.  Said

injuries are either permanent or continuing in nature and ANDERSON will suffer the losses in the future.

**WHEREFORE**, Plaintiff, DONALD ANDERSON, respectfully demands judgment against Defendants, THADDEUS MICHAEL BULLARD SR. a/k/a TITUS O'NEIL and WORLD WRESTLING ENTERTAINMENT, INC., for damages in excess of fifteen thousand dollars ($15,000.00), plus costs and interest.

### RESERVATION OF RIGHT TO SEEK PUNITIVE DAMAGES

ANDERSON reserves the right to seek leave of Court to plead punitive damages pursuant to Fla. Stat. § 768.72 as a result of the intentional misconduct or gross negligence of Defendants as set forth herein.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable.

Dated this 21st day of March, 2018

/s/ *Derek Metts*
**DEREK L. METTS**
FBN: 081708
**METTS LEGAL, P.A.**
607 N. Wymore Road
Winter Park, Florida 32789
Tel. 321.422.0430
Fax. 321.422.0499
derek.metts@mettslegal.com
laura.dowdell@mettslegal.com
*Counsel for Plaintiff*